Good morning, Your Honors. May it please the Court, Chris Morrisoff for the Appellant and the Plaintiff, Marilyn Sperling. Counsel, could you keep your voice up for me? Sure. I guess it's a little hard for me in this room. Thank you. You're not the first to have told me that I should speak up louder. I don't know. The acoustics in this room are not the best. We'll go with that. Again, may it please the Court, Chris Morrisoff for Appellant and the Plaintiff. I would like to reserve four minutes for rebuttal time, if it's acceptable to the Court. Well, you have to keep track of your time. Very well. Thank you, Your Honor. I would like to focus, if it's acceptable to the Court, on what I believe are the two core or main issues here in this appeal. And those are, first, whether it was appropriate for the District Court to dismiss this false advertising claim at the pleading stage on a motion to dismiss. That is, whether this case represents that rare situation. I don't know if it's rare. You've got 9B and dismissals with prejudice after one or two shots at amending where the heightened pleading standard applies are not rare. That may be so, Your Honor. But in general, in false advertising cases, I think it's almost . . . Get me to the heart of this. Let me tell you what my problem is. Sure, go ahead. And you educate me. I see the list price that they're using as the compare-at price, the manufacturer's suggested retail price. And I fundamentally don't understand why it's deceptive or misleading, unless you can show evidence that nobody's charging that. I mean, when I look at manufacturer's suggested retail prices, there are some things . . . Well, it used to be with cameras. Nobody paid list price and they quit even advertising them. They just, in the photo magazines, would say what the street price was. But it depends on the goods. For example, if you wanted Leica equipment, you either paid manufacturer's suggested or markup above that. Years ago, Fairbanks didn't have many four-wheel drive vehicles available and you always had to pay a markup over the manufacturer's suggested retail price, even on a car. There are other things where you always pay less. I don't know if anyone pays retail on clothes. Well, that's a good point. The shoes, I don't know. Church's shoes, one day a year they sell them for half price and the rest of the year they're manufacturer's suggested retail for the men's shoes. I have no idea and the pleading doesn't tell me. Where's the deception? Well, at the outset, we have to, at this stage of the litigation, take Ms. Sperling's allegations as true. But all she said is that she felt misled. There's nothing in there that explains why that is plausible in any objective sense. It seems to me there are three possible things. Anybody looking at Compare-It knows that you're comparing to something and so you have to compare to something. The website tells you that it's comparing to the MSRP and it's accurate if that's compared to the MSRP. Your theory is it's compared to what other people were selling it for and there there's only a $1 difference according to what we have in the record. The third possibility is it means compare to something similar but not so there seems to me to be in the complaint nothing that plausibly connects her feeling to anything objectively plausible. In the operative complaint, she alleges that she did not believe when she saw the term Compare-It that it meant MSRP and that seems to me a reasonable interpretation of the phrase Compare-It. There's many other retailers, major retailers like Ross, TJ Maxx, Marshalls, Home Goods, that use Compare-It prices, the same price tag, and they do not mean MSRP. There is a history with MSRP and if you look at it... We know actually in this case at least the website says that is what it is. Right, but the law is pretty clear that the consumer is not required to look beyond the advertisement itself to go find what that advertiser means. So under your theory it said $60 but actually it was $59. Is that a lawsuit? Well, let me respectfully disagree. The theory is that Ms. Sperling says on more than one occasion, it's in the briefing, I can cite you to the record if you'd like me to, on multiple occasions throughout the operative complaint that had she known it was the MSRP she would not have purchased it and that's the standard on a false advertising case. Let's leave out the web for a minute. I would think that the way she would plead a case would be I bought the shoes at DSW and then I walked by other shoe stores and they were selling them the same price or cheaper than DSW, so evidently I was fooled into thinking I was getting a bargain, but she doesn't say that. No, what she says is I walked into DSW and I saw two prices, the selling price and a Compare-It price. I did not believe that that Compare-It price was the MSRP. I have lost confidence as have many other consumers. If you read the FTC pricing guides, Federal Trade... Yes, but even going on her theory, that's my point, her theory was that it was some other retailer's price and it said $60 and the other retailer was $59, so I guess I just have a really hard time seeing that this is plausibly stating a claim. Well, that $59, I'm not quite sure is accurate. I think $59 was for like a size 13 shoe or something like that, right? There was one shoe that we were able to find in the pre-lawsuit investigation that sold for $59 close to the $60 and it was this shoe that nobody can find. It's a size 13. The normal one, I believe, was about 12 to 15 percent less. I also honestly find it extremely implausible. I mean, we do have now the Iqbal standard where there has to be some plausibility to a complaint, and leaving aside the 9b question, I just find it very difficult to see a plausibility standard met to say, if I had known that this mythical price was an MSRP, I wouldn't have bought the shoes even though I liked them. They were cheap and they fit me nicely. I just find that extremely implausible. Well, as I said, I understand and I can respect the opinion, but I believe that, like I said, at this stage of litigation, we take what Ms. Sperling says is true and I don't believe it's implausible. Does she say anything except expressing her feeling that she felt like she was being ripped off or had been ripped off? Yes. But I need a basis for why she felt like she'd been ripped off. Because she wasn't looking, she thought that the compare-at price was something other than MSRP. She thought if the discount that she thought she was getting was off the MSRP, she would not have purchased it. Why? That's what she says. Why not? Because she doesn't trust MSRP. I would direct the court's attention to the Federal Trade Commission guidelines, 16 CFR 233.2. This is going back 30 years where the Federal Trade Commission... She didn't look at the Federal Trade Commission guidelines and they're not the law and they don't give rise to a civil cause of action. I'm still trying to find out what she pleaded that would satisfy Rule 9b beyond a feeling of being ripped off. Well, Rule 9b... People feel ripped off when they pay a dollar for an apple. It doesn't mean they are being ripped off. That's true. But the elements of the cause of action for a false advertisement is deceptive or false or misleading or has the capacity or tendency or likelihood to mislead or confuse a reasonable consumer. Ms. Sperling says when she walked in and she saw the phrase compare-at, she didn't think it was MSRP. She also says, if I knew it was MSRP, I would not have made the purchase. The reason I bring up the FTC guides is it's one indication that they speak about how consumers, and this is going back 30, 40 years, have lost confidence in the FTC. Ms. Sperling says the same thing. I don't trust MSRP. You may disagree. I guess it isn't a matter of trusting because she's not buying the MSRP, she's buying shoes. That's correct. But she's the bargain hunter. Well, if you like the shoes and it's a price you like, you've got a bargain. It doesn't matter what your... I guess I don't see... In the complaint, I have a great deal of difficulty seeing... Your Honor brings up this benefit of the bargain argument, which I would point out was flatly rejected in Hinojos v. Coles out of this court four years ago, back in 2013. The question is not whether she got a good pair of shoes for a good price. That is not the question. No, but the question is, is the plausibility of the allegations in this complaint that she merely had that knowledge that she could have had from the website but didn't, and I understand that she doesn't have to go there. Not only does she not have to go there, she's 70 years old, she doesn't go on the web. And so the plausibility, I think that gets to the question, what you're really saying is, I don't feel it's plausible that had she known... I don't believe her, I think is plausible. How do we apply Iqbal? Because it asks us to make a judgment. No, this is a very... I find this actually a very hard theoretical question, because we're asked to decide whether pleadings are plausible, which is difficult. That's why I bring up the sort of, I think it's understood that consumers inherently do not trust MSRP. Maybe... Let's say she doesn't trust the MSRP. Then she wouldn't have bought it, and that is what's required of a false advertising claim. If that ad induced me to buy it, and I wouldn't have bought it had I known the truth, then I've lost money or property. I lost the benefit of the bargain. I lost, not the benefit of the bargain, but I lost the bargain that I thought I was going to get. And that gets back to Hinojos. But the whole order here was based on 9b. I'm looking at the complaint, and I'm trying to find... Well, I know offhand if you go to paragraph 120. Excerpts 326. And I'm trying to find the critical paragraph where she says why she felt deceived. Well, if you look to paragraph 120, that comes to mind. And then I think of the operative second amendment complaint. And then I think if I'm going to have any rebuttal time, I'm going to go ahead and look for more instances in the complaint. In our brief, we point out, I believe, at least three or four instances in the complaint. If you look to paragraph 120, I believe it is, at the bottom of paragraph 120, she says, I didn't know this was the MSRP. Had I known, I wouldn't have made the purchases. And there's other instances in there as well. I can certainly look them up. I can see somebody saying, I wouldn't pay retail. I wouldn't pay MSRP. But I don't understand what the connection is between had I known the compare at price was MSRP. Certainly, there are people who say I never pay retail. I wait for things to go on sale. But I don't understand what that means to say, had I known a price I'm not buying at was the MSRP. Ms. Berling is that bargain hunter that this court the retailer to tell them that you're going to pay this price, but you would pay this higher price somewhere else. I think a big unanswered question here is, if DSW is using the MSRP as the comparative reference price, why not just say MSRP? There's some reason they don't just say MSRP. And maybe it's because consumers don't trust the MSRP. Maybe it's because prices are higher sometimes and lower sometimes than MSRP. And most people think it doesn't have much meaning. Well, I'd like to reserve some time. If you want to keep me up here, I won't sit down and invent a sentence or something. Yeah, you may reserve. All right. Thank you. Good morning, Your Honors, and may it please the court. My name is Kirk Jenkins, and I represent the DSW defendants. And you don't have the soda voce issue. The court will have no problem hearing me, I suspect. I find myself in the position of having planned to begin with a misconception, which most of the panel has already perceived. Does that mean you think I haven't, because I haven't asked a question? Are you just moved to the panel? Do you want to talk about that? I absolutely will. I wanted to correct decisively a misconception, which we see at page two of the reply, where we read, the ultimate question here on appeal is whether it was proper for the district court to disregard plaintiffs' factual allegations and conclude at the pleading stage that she was not or could not have been deceived or misled by DSW's compare-at-price tag. Your Honors, that never happened. That's not what the district court held, and it's not what my clients are arguing here on appeal. We're reviewing de novo, so we can't defer at all to the district court. I understand that, Your Honor, but at ER 14, which is the order that we're discussing, the district court says the SAC's allegations merely present conclusory allegations that defendants' comparative reference prices do not represent the prevailing market prices for defendants' products. Nowhere does the SAC explain how defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices. This is not a case that can be dealt with by the citation that the plaintiff cited again, both in his brief and again during his argument of, oh, we very seldom deal with the finding of deceptiveness on a motion to dismiss. That's not the point. In fact, I don't think these price tags are deceptive, but that's not what our motion was based on. Our motion was based on, okay, you've made the conclusory allegation of fraud or misrepresentation. Why? How is it deceptive? Why is it deceptive? And there's another telling comment in the reply brief on that exact subject, and I'm reading now from the reply brief at page 3. The SAC clearly alleges why DSW's compare-at price advertising is deceptive because reasonable consumers do not interpret the phrase compare-at standing alone to mean MSRP, and because consumers do not trust MSRP as dependable indicators of comparative value. That's what the plaintiff said again just now. Your Honors, to me, that answers the Twombly-Iqbal question, the Rule 9b question. Why is it deceptive? How is it deceptive? I say, because we say it is. And, Your Honors, it's the case that because we say so, litigation doesn't state a claim in the Twombly-Iqbal era. That's why this case was dismissed, and that's why we suggest it should be affirmed. I guess interpreting her complaint most favorably, she's saying an inducement that contributed to my buying the shoes is I thought I was getting $30 off, but I really wasn't getting $30 off. Well, that's the problem, Your Honor. Other than her say-so, there are no facts alleged to support that. That's the second theory that I was about to get into. No facts pleaded to show that she wasn't getting $30 off. Correct. In fact, when our law firm investigated nearly a year later, they found that it was, even then, still a substantial discount. I'll flip the two theories that the plaintiff has discussed and go immediately to that and then come back to where I was. The second theory is the notion that there was something wrong with these prices because they don't accurately reflect the prevailing market price. And I want to be clear, and this is to the Watson Declaration, in fact, these are not 100% always MSRPs and that's it. Our client engages in a verification process, and if there's an MSRP that in fact turns out not to be the prevailing market price, then it slumps the verification process and it never appears on the complaint. That's not in the complaint. We have to decide an appeal from a granting of a motion to dismiss on the complaint. I agree, Your Honor. And the prevailing market theory, it suffers from the same problem of Rule 9b and the Twombly-Iqbal problem. There are no allegations, as the quote from the order that I just read the court said. I thought there was an allegation that the plaintiff found something selling for $53. I may be misremembering that because all these prices have been floating in my head. But I thought she said that she thought it was the prevailing price and the real prevailing price was $53. Am I misremembering that? No, Your Honor. There is no evidence in the record. Eleven months, I believe the original purchase was in January, and then the comparisons came largely from my law firm, and they were in December of that year. So they weren't prevailing at the same time. When we assert in January of 2015, this is the prevailing market. I'm trying to think of why that matters. I could see it with cars. You get a car at the beginning of the model year. It'll cost more than a car at the end of the model year when you negotiate with the car salesman. I have no idea with shoes. Fashion is the same way, Your Honor. Women's shoes, it is. It does matter if it's been on the market for 11 months. But it's telling, I think, that on this subject of, well, they don't accurately reflect the market prices. The plaintiff's argument isn't, well, this is what I did, and I took these 12 steps, and I looked up all of these archives. The plaintiff's argument is that this is a virtually impossible burden that would largely wipe out advertising cases. Your Honors, with all respect, that's an answer that's straight out of 1995. It's not in the record, but as we pointed out in our brief, the archive.org website, I counted 3,521 archived copies of my client's website over a 21-year period and 14,000 copies of Macy's website. It's also possible to go on newspapers.com in a matter of seconds call up prices. This notion that either, A, it's exclusively women, our knowledge, or B, it's such a terrible burden to try to verify what was the prevailing market price at the time that you bought this. It's just not true, Your Honor. So the notion that the plaintiff can be excused because it's somehow in our exclusive knowledge. And one final point on that issue that I wanted to make before going to the second argument is that the plaintiff has said, well, DSW, you need to verify that there are substantial sales in a substantial number of retailers over the same period in the exact area. Your Honors, we do do a verification process, but as I said in the brief, retailers exchanging contemporaneous price and quantity data on products that are currently at sale, that's likely to get you a very disturbing phone call from the antitrust division of the Justice Department. That's just not something that retailers are smart to be doing. Don't they shop each other? I recall years ago on Nassau Street in New York watching sellers of postage stamps, rare stamps, look at each other's windows and write down the prices. That's essentially how we verify these prices, Your Honor. That's exactly right. I'm going down to the first of the two theories, the notion that failing to disclose that these prices, at least at the beginning, come from MSRP before they go into our verification process. It comes from, as we heard in the initial discussion, from the FTC pricing guides, and there are three fatal flaws in that problem, even leaving aside the Twombly-Iqbal problem of we have the plaintiff saying, well, I feel deceived by the fact that it wasn't on the price tag. This is the MSRP, and there's no answer to why is that deceptive? There are no factual allegations to make that a plausible claim. The three problems are as follows. Number one, it's been settled for a very long time, as the Court pointed out in the initial discussion, that the FTC pricing guides simply don't have the force of law about them. Secondly, it's based on the same misconception. This argument is based on the same misconception that we talked about at the outset, the notion that these were MSRPs and nothing else. The FTC pricing guides specifically allow MSRPs that are also verified comparative retail prices, so we didn't violate anything, even if it were possible to violate the FTC pricing guides. Thirdly, and I acknowledge that the Rubenstein Court found a different way, but there are cases both from this Court and from a number of the districts in the Ninth Circuit holding that there is no private right of action for violation of the Federal Trade Act, and you can't manufacture one under state law by taking a federal statute that there's no private right of action for and say, well, I'm proceeding under the CLRA, the FAL, the UCL. There's a number of cases cited in our brief that hold that. Your Honor, fundamentally, this is a Rule 9b case and a Twombly-Iqbal case. Our position is not—although I don't believe these tags are deceptive—our position is not that's why this was dismissed and why this should be affirmed. Our position is we're entitled to ask the Twombly-Iqbal question, why? Go further than just I felt deceived. Why is it deceptive? Why does it not satisfy the—not match the prevailing market price so we can mount a defense of this case? We didn't get that at the District Court and we didn't get it here, so we respectfully ask that the Court affirm. Thank you. Mr. Morozov, you have some rebuttal time remaining? Thank you, Your Honor. This is a 9b case. The whole District Court's order was premised on 9b and 9b asks those questions, who, what, where, when, and how, right? And I don't know, maybe we're not arguing that the complaint doesn't adequately allege the who, what, where, and when. I mean it— How is it deceptive? It's your best shot. For the same reason I said that we discussed up when I first came up, she did not believe that this was an MSRP and she would not have purchased it had she known it was an MSRP. And I don't believe there's anything more that needs to be pled with that. That's very specific and there are allegations in the complaint. I think it does. I mean— I think she'd have to plead why I wouldn't have bought the shoes if they hadn't said compare at a particular number. I mean— I don't know that I would agree with that. Your case is basically one attraction to the shoes was getting $30 off. And certainly when people are looking at something and they think, I don't know, and then they realize they're getting a big discount, well, then they'll grab it because it's a good deal. Well, there are specific— Somehow she has to explain why it wasn't such a good deal. With respect to the discount and the prevailing market price. Number one, pleading that the compare at price was not the prevailing market price is not an essential element of the claim. But there are specific factual allegations at paragraph 122 where she says, in a pre-lawsuit investigation, she found that the shoes were selling elsewhere at $53. That's 12%. That's not nothing. For a bargain shopper, that 12% is not nothing. So— Paragraph 122 is one that talks about her independent investigation. Correct. Which happened when? Which happened after the complaint or right around when the complaint was filed. Understandably, it wasn't at the time of purchase. Relative to purchase, how long after was it? I believe it was about five months after the purchase, not 11 months after the purchase. But there's a four-year statute of limitations. And I understand counsel wants to say, well, this woman could have gone back onto archived websites. That's not a reasonable requirement to impose on consumers under California's very broad false advertising laws. If you have a four-year statute of limitations— What's the matter with the when issue that the appellees raised? Why isn't this like somebody saying, well, I thought I was getting a good deal on my Nissan Sentra, and then five months later, I talked to a guy who got one for less? I think, again, we're missing the essential claim of the MSRP. She's saying, I wouldn't have purchased it at all. And when somebody is induced by an advertisement to purchase something, and then they say, when I found out the truth of the advertisement, which was hidden, which was not disclosed on the advertisement, I would not have purchased it at all. That's all she's got to plead. It's not a question. I believe this whole prevailing market price is a red herring. It may be pled in the alternative in the complaint. That's what you said in the complaint, is that she thought—she didn't think it was the MSRP. She actually thought it was the retail price elsewhere. It was what she would pay down the street if she walked out and went somewhere else. Well, that's one alternative theory. She pled in the alternative. But how do we know that's not true? Excuse me? She didn't plead that that's not true, that it wouldn't have been $30 more down the street. She did. Look at paragraph 122. I know you're saying, well, that was done five months later. But is it now a requirement that a consumer, when she purchases something, has to immediately go out and do an investigation about whether they're prevailing? She's supposed to be able to trust the retailer. But, counsel, that's just it. I just don't understand why it's deceptive to post the MSRP as Compare At. That's it for me. Why is that deceptive? Because Compare At doesn't lead me or a reasonable consumer to believe that it's the MSRP. Every other retailer in town— But asserting that in a conclusory fashion runs right into your Twombly problem. I don't understand how it's conclusory for a consumer to say, when I saw Compare At, I didn't think it was MSRP. And it turns out it was MSRP. What more would you want her to say? I didn't think it was MSRP because— And she said, because if it was MSRP, it should have said MSRP. MSRP, like if the shoes said made in America and they were actually made in China. That's correct. Many tags, as you all probably know, being consumers yourselves, say MSRP. So you would assume— I mean, go buy a car. It says MSRP. You go out and many of these retailers, TJ Maxx and things, they have a second price tag on it, not just the price tag of the item, that comes from the manufacturer. So that they say Compare At 60, MSRP 80. And to be honest with you, she shops at these other places as well. And so she believes that the MSRP is always inflated over the prevailing market price and definitely she's not looking to save some percentage off the MSRP. Thank you, counsel. The case just argued is submitted and we appreciate very much your interesting comments and this interesting case.
judges: Kleinfeld, Graber, Christen